(C.D. 4767)

WILD HEERBRUGG INSTRUMENTS, INC. *v.* UNITED STATES

Court No. 72-2-00278

Port of New York

(Decided September 14, 1978)

*Barnes, Richardson & Colburn* (*Richard C. King* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*William F. Atkin*, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise in this case consists of phototubes which were manufactured in and exported from Switzerland in 1970 and 1971 and classified in liquidation upon entry at New York under TSUS item 708.89 as modified by T.D. 68-9 as optical appliances and instruments not provided for elsewhere in part 2 of TSUS schedule 7, at the duty rate of 31 or 27 per centum ad valorem, depending upon date of entry. It is claimed by the plaintiff-importer that the phototubes should be classified under TSUS item 722.34 as modified by T.D. 68-9 as parts of photographic cameras (other than motion-picture cameras) not containing a photographic lens valued over 50 percent of the value of the part, at the duty rate of 14 or 12 per centum ad valorem, depending upon date of entry. Alternatively, plaintiff claims that the phototubes should be classified under TSUS item 708.80 as modified by T.D. 68-9 as frames and mountings for compound optical microscopes, at the duty rate of 21 or 18 per centum ad valorem, depending upon date of entry. It was stipulated that none of the phototubes in issue contain photographic lenses.

Walter E. Gumpertz, product manager of plaintiff's microscope division, described the function of phototube 256 543 as being illustrative of the function of the phototubes in general. According to the witness this phototube is a beam splitter phototube which is inserted on top of the microscope tube support and underneath the binocular body of the microscope. The tube is capable of varying the relative amounts of light reaching the camera or eyepiece. The tube contains optical elements in the form of relay lenses and prisms. The function of the relay lenses is to compensate for the introduction of the tube into the microscope system. The function of the prisms is to divert the light beam in various ways.

Mr. Gumpertz assembled in court for demonstration purposes a Wild stereo microscope M5A comparable to that illustrated in exhibit

7, utilizing a phototube identical to phototube 256 530 with the exception of a flange having been substituted for a clamping ring for attaching the camera.

The witness assembled components for equipping the microscope for photomicrography by removing the binocular body and inserting the phototube in proper alignment. As inserted, the phototube (through the beam splitter in the left-hand path) picks up part of the image for the camera and, with the exception of a filter in the right-hand path to balance the light intensity of the images, leaves the right-hand path free.

After the binocular eyepiece is reinstalled on top of the phototube the image is identical but slightly enlarged because of the lengthening of the light path caused by the introduction of the tube.

An eyepiece is inserted in the phototube in order to project an image into the camera in the film plane when the microscope is in the proper focus position. The system is designed so that the image observed through the binocular and that created for the camera are in sharp focus at the same time.

The apparatus assembled in court approximates that illustrated at the top of page 2 of exhibit 8. However, it lacked the focusing telescope illustrated in exhibit 8 as marked by the witness. With the addition of the telescope and film the apparatus would have been prepared for taking photographs of the specimen. The equipment fitted on top of the phototube and eyepiece included an adaptor or flange, a shutter piece, camera lens, and film magazine. These parts, without a phototube, are sold as a camera package.

The purpose of the phototube whose operation was demonstrated is to remove 75 percent of the light or image from the left-hand observation path and project it into the attached camera via an eyepiece. This image is transmitted into the camera at infinity projection where a normal camera would be focused at various distances.

Any camera used with a phototube must utilize a lens, either its own or the eyepiece of the phototube, to form an image. Cameras can be utilized to take pictures of microscopic specimens without phototubes; but, according to Mr. Gumpertz, such operations would be highly impractical because of the trial and error method required. Mr. Gumpertz testified (R. 31):

> Q. Could both the microscopes which you refer to as compound optical microscopes and stereo microscopes both, in fact, be considered to be compound microscopes rather than simple microscopes?—A. Yes. They are both compound microscopes. Only to make a distinction, one of them is referred to as a stereo microscope.

Markus F. Meyenhofer, a research biologist for Merck & Co. who, among other things, has used one of plaintiff's stereomicroscopes

capable of photomicrography, testified that any kind of camera can be utilized with a phototube as long as it would fit the diameter of the phototube. He stated that it is advisable to utilize a single lens reflex camera because you can check the focus, whereas on other cameras it would be focused by trial and error.

The witness also testified that in his own laboratory the phototubes on plaintiff's microscopes are not removed even if the microscopes are not going to be utilized in photomicrography for a long period of time. He stated that the phototube is not inconvenient during the normal use of the microscope. Mr. Meyenhofer testified (R. 136-137):

> Q. What factor determines the length of the phototube?—A. The factor is determined by the composition of the lenses in the microscope.
> Q. If the phototube were too long what would be the result?— A. Well, your image wouldn't be in focus.
> Q. And if it were too short?—A. The same thing would happen.

In addition to use with cameras, it was also brought out in the testimonial evidence that the imported phototubes are capable of being used in connection with microscopes for projection purposes and for motion-picture purposes.

In support of its primary claim under item 722.34 plaintiff argues "when the phototube is attached to a camera to be used for photomicrography, the tube is necessary to the completion of the camera and its operation." (plaintiff's brief, p. 14) Defendant counters with the argument that "the phototubes are not an integral, constituent, or component part without which the cameras with which the phototubes are used could not function as cameras. Therefore, the imported phototubes cannot possibly be considered to be 'parts' of cameras for tariff purposes." (defendant's brief, pp. 22-23)

And in support of its alternative claim under item 708.80 plaintiff argues that "[t]he phototube does not substantially affect the image created by the microscope for visual inspection, with the exception of some increase in size because of the length and path of the image, and some darkening of the image caused by the diversion of a portion of the light for photographic purposes." (plaintiff's brief, p. 15) Defendant, agreeing in the alternative, adds, "the imported phototubes are attached to microscopes, contribute to the magnification of microscopes, are designed to complement the optical system of microscopes, and function basically to permit a compound optical microscope *without* a means for photographing or projecting the image to serve in an equivalent manner (once a camera is also used) as a compound optical microscope *with* means provided for photographing or projecting the image." (defendant's brief, p. 34)

In the court's opinion, the imported phototubes are properly classifiable as mountings for compound optical microscopes under TSUS item 708.80, and the court so holds. It is established in the record that the

stereomicroscopes to which the imported phototubes are attached are a form of *compound optical microscope.* And it is also established in the record that it is the *microscope* and not the camera which is *host* to the imported phototubes. For example, the configuration of the phototubes is influenced by optical characteristics of the microscope, the tube can be and sometimes is left in place on the microscope when the scope is employed solely for examination purposes, and even in the case of cameras designed by the manufacturer of the tubes in issue for use with those tubes, the tubes comprise no part of the camera package. Hence, if the tube is part of any instrument comprising a photomicroscopy system within the broadened concept of the term "part" (see *Gallagher & Ascher Company* v. *United States,* 52 CCPA 11, C.A.D. 849 (1964) [auxiliary heaters for automobiles]; *United States (Korlis Ltd., Party in Interest)* v. *The Westfield Manufacturing Company,* 49 CCPA 96, C.A.D. 803 (1962) [bicycle kickstands]; and *Trans Atlantic Company* v. *United States,* 48 CCPA 30, C.A.D. 758 (1960) [closer brackets for door frames] on optional equipment as parts of articles), it is part of the host microscope. Contrary to plaintiff's prime assertion, the tube is never "attached to a camera." In application the camera is mounted on or affixed to the tube or a portion thereof only *after* the tube has been mounted on the microscope. Consequently, in any sense of the meaning of the term "part," the tube cannot be deemed a part of a camera.

But even if it could reasonably be found that the imported phototubes are a "part" of a camera, the court would, nevertheless, be compelled, on the instant record, to find that the tube is a part for which Congress has otherwise made specific provision. There is no question in the court's mind but that these phototubes fall squarely within the ambit of the term "mountings" for compound optical microscopes under item 708.80. *Cf. United States* v. *International Forwarding Co.,* 9 Ct. Cust. Appls. 156, T.D. 37995 (1919), holding specially designed glass tubes for holding liquids for purposes of polariscopic examination to be "mountings" for optical instruments within the meaning of paragraph 93 of the Tariff Act of 1913. In that case the appellate court said (p. 159):

> * * * the word "mountings" when used in connection with optical instruments such as the microscope and polariscope is used in the sense of accessories, adjuncts, or parts thereof * * *.

*Accord: See Explanatory Notes to the Brussels Nomenclature,* 1955, section XVIII, heading 90.12.

And in view of the provision for mountings in item 708.80, resort to item 708.89 for classification of the phototubes in issue would be inappropriate since item 708.89 is at best residual.

For the reasons stated, plaintiff's alternative claim is sustained. Judgment will be entered herein accordingly.